UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
NORBERT WU, Individually and on Behalf of All  :
Similarly Situated Persons,                    :            10 Civ. 6537 (KBF)
                                               :
                              Plaintiff,        :            OPINION & ORDER
                                               :
          -v-                                   :
                                               :
PEARSON EDUCATION INC.,                         :
                                               :
                              Defendant.        :
-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED JAN 1 1 2013

KATHERINE B. FORREST, District Judge:

On September 2, 2010, photographer Norbert Wu brought a putative class action against Pearson Education Inc. ("Pearson") asserting one count of copyright infringement.[1]  On September 30, 2011, this Court denied Wu's motion to certify a class. (See Mem. Order & Opinion, ECF No. 39.)

Pearson now moves for summary judgment. (See Def.'s Mot. Summ. J., ECF No. 48.)  For the reasons set forth below, that motion is GRANTED.

## I.    BACKGROUND

The following facts are undisputed unless noted.  Wu is a professional photographer who licenses his works for use in various publications. (Pl.'s Counterstatement Material Facts ¶ 2, ECF No. 51 ("PCSOF").)  Pearson publishes educational materials such as textbooks. (Id. ¶ 1.) "Over the years, Wu has engaged several photo agencies to negotiate and enter into licensing agreements

---

[1]    In 2009, Wu had previously commenced a separate putative class action against Pearson in which he asserted a claim for copyright infringement based on a different theory. See Wu v. Pearson Educ. Inc., No. 09 Civ. 6557 (S.D.N.Y. July 23, 2009).

with Pearson on his behalf." (Id. ¶ 6.)  Photo agencies act as licensing agents for

rights holders of photographic works.  (See id.)  The agencies enter into contracts

with rights holders that specify the terms and conditions pursuant to which the

agency may license their works.  (See, e.g., id. ¶ 7.)

Among photo agencies with which Wu has entered into such agreements are

Minden Pictures ("Minden"), Peter Arnold, Inc. ("Peter Arnold"), Science Faction,

Getty Images ("Getty"), National Geographic Stock and DRK Photo (collectively, the

"Photo Agencies").  (Id. ¶ 6.)  These Photo Agencies licensed, on plaintiff's behalf, all

of the works at issue in this suit.  (See Compl. ¶¶ 27-44, ECF No. 1; Church Decl.

Exs. 6-21, ECF No. 48.)

Wu alleges that Pearson used the following images without obtaining the

requisite rights:

1. "Little Pocket Mouse";
2. "Jaguar";
3. "Angelfish";
4. "Lingcod";
5. "Cholla";
6. "3-Horned Chameleon";
7. "Cone Snail";
8. "Emperor Penguin";
9. "Remora";
10. "Electric Catfish";
11. "Chambered Nautilus";
12. "Slate Pencil Urchin";
13. "Garilbaldi";[2]
14. "California Sealion";
15. "Garibaldi";
16. "Goose Barnacle";
17. "Elephant Ear";

[2] This appears to simply be a misspelling of another image: Garibaldi.  Whether it is spelled correctly and whether it is in fact a separate image are irrelevant to the present analysis.  Accordingly, the Court does not address the issue further.

2

18. "Nudibranch";
19. "Goldman's Sweetlips";
20. "Candy-Cane Sea Star";
21. "Portuguese Man of War";
22. "Slender Hatchetfish";
23. "Spotted Ratfish";
24. "Elegant Squat Lobster";
25. "Whale Shark";
26. "Crinoid";
27. "Flightless Cormorant";
28. "Sergeant Major"; and
29. "Deep Sea Anglerfish" (collectively, the "Identified Works").

(Compl. ¶¶ 27-44, ECF No. 1.) Wu also alleges that the Identified Works constitute

a small fraction of Pearson's infringement of his rights (id. ¶ 25), though he has not

identified any other specific instances of such infringement.

At his deposition, Wu was shown documentation between the Photo Agencies

and Pearson that related to the publication of each Identified Work.  (Church Decl.

Ex. 1 at 284:9-285:1, 305:23-306:15, ECF No. 48 ("Wu Depo.").)[3]  Wu admitted that,

until counsel for defendant showed him that documentation, he had not reviewed

those materials.  (See Wu Depo. 111:15-20, 309:3-13, ECF No. 48; PCSOF ¶¶ 11-12.)

These documents evidence arrangements between Pearson and individual Photo

Agencies, exchanging money for the right to use the Identified Works and other

images.  (See Church Decl. Exs. 6-21, ECF No. 48.)

At his deposition, plaintiff agreed that he had accepted payment from his

agents for photographs in connection with each of the alleged instances of

infringement identified in his Complaint.  (PCSOF ¶ 20.)  Plaintiff also conceded

---

[3]      Wu's deposition is also attached as Exhibit 1 to the McCulloch Declaration (ECF No. 51).  For
the sake of simplicity, subsequent references to the Wu deposition will simply refer to "Wu Depo."
regardless of which declaration attached the portion of the deposition cited.

that the Photo Agencies generally pay him within ninety days of issuing a license for one of his works. (Id. ¶ 22.)  He testified further that he had no reason to believe that he had not received a commission for the use of his works identified in the Complaint. (Id. ¶ 24.)

Plaintiff was asked the following questions and gave the following answers at his deposition:

> Q. . . . We looked at documentation today for all of the allegations in your Complaint that refer to specific photographs being used in specific textbooks, do you remember that?
>
> A. We looked at clause 27 through 44 in detail.
>
> Q. And based on all the documentation that you saw today, which you've never seen before today, you believe that Pearson obtained permission to use your photographs from your agents, isn't that true?
>
> . . .
>
> A. I agree with what you said.

(Wu Depo. 305:23-306:15.)  Plaintiff also testified that he had granted the Photo broad discretion to enter into licenses on his behalf, including the right to enter into retroactive licenses (see Wu Depo. at 126:24-128:11, 304:5-13),[4] and that he never sought to amend or modify his agreements to prohibit them from licensing his photographs retroactively (id. at 439:10-440:6).[5]

---

[4]     In his counter-statement of facts, plaintiff "contests" this fact. (See PCSOF ¶ 18.) However, the evidence he cites does not contradict his deposition testimony that his Photo Agents had the right to grant retroactive rights. Instead, the testimony cited is simply an argumentative statement that publishers were engaged in "stealth licensing." (See id.) That statement is insufficient to create an issue of fact as to the licensing discretion Wu contractually granted to the Photo Agencies.

[5]     Plaintiff "contests" this fact as well. (PCSOF ¶ 19.) However, plaintiff does not assert that he gave inaccurate deposition testimony when he stated that he had not sought to amend or modify his license agreements. Instead, his assertion is essentially that he did not understand that late

Plaintiff's allegations center around the insufficiency of the licenses that Pearson obtained. First, plaintiff claims that the licenses were invalid as the products of fraud, though he points to no support in the record for that proposition. (See Mem. Law Opp'n Def.'s Mot. Summ. J. 6-8, ECF No. 52.) Second, plaintiff claims that the licenses did not cover all of Pearson's uses of his copyrighted materials. In particular, plaintiff argues that the licenses Pearson obtained did not confer the right to use plaintiff's copyrighted material "retroactively," or prior to the date the invoice became effective.

In support of this second argument, plaintiff notes that he is opposed to publication without prior approval. (Wu Depo. at 87:10-14.) He also points to several features of the relevant contracts, including three paragraphs of the "Terms and Conditions" printed on the reverse side of Minden invoices:

> 1. b) Submission is for examination and reference only. <u>Images may not be reproduced, copied or used in any way whether in sketches, photocopies, duplicates, scans or comps without (a) express written permission on a Minden Pictures' invoice stating the rights granted and terms thereof and (b) payment of said invoice.</u> The reasonable and stipulated fee for any unauthorized usage shall be ten (10) times our normal fee for such use.
>
> . . .
>
> 11. Time is of the essence in the performance by Recipient of its obligations for payments and return of images hereunder. <u>No rights are granted until payment is made to Minden Pictures, even though Recipient has received an invoice.</u> Any claims adjustment or rejection of terms must be made to Minden Pictures within (10) days after receipt of the invoice.

---

permissioning was occurring. This is insufficient to create a material issue of fact as to existent contractual rights regarding the scope of Photo Agencies licensing authority.

> 12.  Payment is required within thirty (30) days of invoice date. Thereafter, a service charge of one and one half (1.5%) percent per month (18% per year) is applied on the balance until paid in full.  <u>Receipt of an invoice outlining fees and subsequent rights does not constitute copyright clearance nor permit use or distribution of an image.  Licensing rights are conveyed only upon Minden Pictures [sic] receipt of payment in full of the amount invoiced.</u>

(McCulloch Decl. Ex. 2 ¶¶ 1(b), 11-12, ECF No. 53 (emphasis added).)  Wu also argues that the invoices defendant submitted in connection with this motion contain language that limits defendant's licenses to prospective uses only.  (<u>See</u> Church Decl. Exs. 6-7, 18, ECF No. 48 (including "Start Date[s]"); <u>id.</u> Ex. 8 ("No rights are granted until payment is received by NGS even though you have received this invoice and delivery agreement."); <u>id.</u> Exs. 9-12 (including "Invoice Date[s]").)

In support of his argument that defendant used plaintiff's copyrighted material prior to the period for which it was licensed, plaintiff points only to defendant's admission that its "file to printer date[s]" for many of the relevant publications "occurred before the permission-related documentation was complete." (McCulloch Decl. Ex. 3 ¶¶ 1-16, 20-36, ECF No. 53.)

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may not be granted unless all of the submissions taken together show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In making that determination, the Court must "construe all evidence in the light most favorable to

6

the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial and cannot merely rely on allegations or denials in the pleadings. See Fed. R. Civ. P. 56(c), (e); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted). A non-movant's facts "must be material and of a substantial nature, not fanciful, frivolous, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (citation omitted); see also Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").

## III.   LEGAL STANDARD FOR COPYRIGHT INFRINGEMENT

"To sustain a claim for copyright infringement, a plaintiff must show '(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work.'" Psihoyos v. John Wiley & Sons, Inc., 11 Civ. 1416, 2011 WL 4916299, at *1

7

(S.D.N.Y. Oct. 14, 2011) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003)).  A claim for infringement will fail if the challenged use of the copyrighted work is authorized by a license.  See Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998).  Where "only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized." Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995) (citing S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 (9th Cir.1989)).

Copyright licenses are generally construed according to neutral principles of contract interpretation.  See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 487 (2d Cir. 1998); Leutwyler v. Royal Hashemite Court of Jordan, 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001).  Under ordinary circumstances, copyright licenses may be granted either prospectively or retroactively.  See, e.g., Silberstein v. Fox Entm't Grp., Inc., 424 F. Supp. 2d 616, 629 (S.D.N.Y. 2004); Country Rd. Music, Inc. v. MP3.com, Inc., 279 F. Supp. 2d 325, 329 (S.D.N.Y. 2003); but cf. Davis v. Blige, 505 F.3d 90, 101-08 (2d Cir. 2007) (holding that retroactive ratification by one co-owner cannot vitiate other co-owner's infringement claim).

## IV.   DISCUSSION

This motion presents a simple question: did Pearson use Wu's copyrighted material without a license (granted at some point in time) adequate to cover that use?  Because Wu has not cited facts that would allow a reasonable jury to so find, Pearson's motion for summary judgment must be granted.

Plaintiff could have defeated defendant's motion if he had raised a triable issue of fact as to whether: (1) Pearson failed to obtain licenses for his copyrighted material; (2) Pearson obtained licenses that did not cover the full extent of its use of his copyrighted material; or, potentially, (3) even if Pearson obtained sufficient licenses for Wu's copyrighted material from the Photo Agencies, the Photo Agencies did not have authorization to license that material in the manner they purported to do.  Wu has not raised any such triable issues of fact.

First, there is uncontroverted evidence in the record that Pearson obtained licenses to use each of the works at issue in the Complaint.  That evidence is recited above and need not be repeated here.  Plaintiff so testified at his deposition.  Moreover Wu's allegations of fraud — which, if true, could potentially invalidate the licenses — are completely unsupported by record evidence.  He has therefore failed to raise a triable issue of fact with respect to whether Pearson obtained licenses to use his copyrighted material.

Second, plaintiff has failed to raise a triable issue of fact as to the sufficiency of Pearson's licenses.  Most of his argument centers around language in Pearson's licenses providing that rights are not transferred until payment is made and an invoice is received.  (See Mem. Law Opp'n Def.'s Mot. Summ. J. 13-14, ECF No. 52; Church Decl. Exs. 8-12, ECF No. 48.)  This language undoubtedly controls the timing of when Pearson obtains the relevant rights, but it has no obvious connection to whether the appropriate rights were in fact conferred.  This is a question of scope.

Put another way, there is no legal prohibition to obtaining a retroactive license if it is authorized by the rights holder.

Plaintiff argues that, absent express language, a license cannot apply retroactively. (Mem. Law Opp'n Def.'s Mot. Summ. J. 14, ECF No. 52.)  Based on the record evidence presented on this motion, this Court disagrees.  The invoices cited purchase a right to use particular works for particular purposes (i.e., certain publications) in certain manners (i.e., certain numbers of copies or in certain media, subject to certain terms and conditions).  These terms are clear.  It is only logical to find that Person's use is permissible as long as it conforms to the terms of the licenses Wu concedes to have granted.  The Court declines to read additional, unstated limits into otherwise clear contracts between sophisticated parties (Pearson and the Photo Agencies).  Wu attempts to create an issue of material fact as to these contracts by citing to extrinsic evidence (see id. at 16-17), but such evidence cannot be used to change the meaning of otherwise unambiguous contracts.  In any event, the extrinsic evidence offered does not raise an issue of material fact as to the scope of the licenses.[6]

---

[6]     Plaintiff cites to a deposition of Julie Orr, who Wu describes as "the Manager of Pearson's Permissions Department." (Mem. Law Opp'n Def.'s Mot. Summ. J. 16, ECF No. 52.)  Wu does cite Orr testimony that Pearson was only seeking permission prospectively (see McCulloch Decl Ex. 4, ECF No. 53), but as Pearson points out in its reply, that testimony is taken out of context.  Plaintiff cites Orr's discussion of Pearson's practices from after a 2010 change of policy — a change that clearly post-dates all but one of the invoices at issue in this suit. (See Church Reply Decl. Ex. 1, ECF No. 55; Church Decl. Exs. 6-21, ECF No. 48.)  In his Rule 56.1 Counterstatement of Material Facts, Wu also cites to his own deposition testimony that might be construed to describe industry custom regarding late permissioning. (See PCSOF ¶ 8.)  Such statements are conclusory and self-serving, and do not suffice to defeat summary judgment.

Notably, of the twenty-nine works at issue (or twenty-eight, <u>see</u> supra note 2), all but three do not contain a "Start Date."[7] (<u>Compare</u> Church Decl. Exs. 6-7, 18, ECF No. 48, <u>with</u> <u>id.</u> Exs. 8-17, 19-21.) Wu has raised no issue of material fact that would allow a jury to find that the licenses without start dates do not grant sufficient usage rights.

The permissioning documents for the remaining three works do contain start dates.[8]  But here, too, Wu has not raised a triable issue of fact as to whether Pearson's alleged infringing use pre-dated the start dates.  In other words, Wu does not point to facts suggesting that Pearson used his copyrighted material prior to the period <u>for which</u> it obtained a license.  Wu cites only to defendant's interrogatory answers, which acknowledge that many of the relevant publications had "file to printer date[s]" that "occurred before the permission-related documentation was <u>complete</u>." (McCulloch Decl. Ex. 3 ¶¶ 1-16, 20-36, ECF No. 53 (emphasis added).)[9]

---

[7]     One of the invoices has a ten-year term with a definite end date.  (<u>See</u> Chuch Decl. Ex. 10, ECF No. 48.)  That invoice could arguably be treated in a like manner to the invoices with definite start dates.  The Court need not decide whether to treat it as such, because in no event would it preclude summary judgment.

[8]     Pearson argues that the fact that the start dates in two of the three invoices precede the date of the invoice demonstrates that the invoices permit retroactive licensing.

[9]     There is nothing in Wu's papers that would allow a jury to conclude that (1) the file-to-printer date is equivalent to when Pearson began using Wu's materials in a manner that would require a license, or (2) the failure to complete permission-related documentation generally also involved the failure to complete documentation for Wu's materials.  Wu complains that defendant's responses to his interrogatories deliberately obfuscated the issue.  Nevertheless, it was Wu's responsibility, over the course of over two years of litigation, to assemble some proof for his case.  The fact that defendant may not have made the process easy for him does not shift his burden at summary judgment.

Wu argues that "Pearson does not—and cannot—deny that it (i) copied Plaintiff's photos by including them in publication files; (ii) delivered the publication files containing Plaintiff's photos to third-party printing companies; (iii) instructed and authorized these printing companies to copy and reproduce Plaintiff's photos in hundreds of thousands of copies of these books; and (iv) published the books containing Plaintiff's photos and made them available for sale to the public, all before obtaining a license." (Mem. Law Opp'n Def.'s Mot. Summ. J. 13, ECF No. 52.)  However, plaintiff points to no facts whatsoever to support the assertion that Pearson engaged in such conduct prior to

11

Those interrogatory answers do not bear on the question relevant for this motion: whether Pearson used Wu's copyrighted materials prior to the <u>start date</u> for any of <u>Wu's</u> licenses. The fact of the start dates alone does not, therefore, defeat summary judgment.

Third, plaintiff indisputably gave the Photo Agencies the discretion to enter into retroactive licenses. (Wu Depo. 304:5-13.) Wu granted the Photo Agencies, acting on his behalf, the discretion to confer whatever licenses Pearson needed to obtain. (<u>Id.</u>) Plaintiff cannot now complain of conduct he authorized.

Plaintiff attempts to raise a triable issue of fact in four additional ways. First, he claims that these works are the tip of the iceberg and that "Pearson engaged in an egregious and systematic pattern of infringement." (Mem. Law Opp'n Def.'s Mot. Summ. J. 10, ECF No. 52.) That assertion is made without any reference to another specific work by Wu and specific use by Pearson. Instead, the reference is to a document produced during discovery from Pearson's Global Rights Database Warehouse.[10] The report is alleged to contain information indicating that Wu's works appeared in 199 different publications and "thousands of ancillary products." (<u>See</u> McCulloch Decl. ¶ 3, ECF No. 53.) However, there is no information in his summary judgment papers indicating that these uses were unlicensed. Even assuming the statements in paragraph three of the McCulloch

---

the start date of its licenses. Moreover, because this issue goes to the scope (not existence) of the licenses Pearson obtained, it was plaintiff's burden to support those assertions with record material, not Pearson's burden to deny them. <u>See</u> <u>Bourne</u>, 68 F.3d at 631.

[10]     Wu does not append the Global Rights Database Warehouse to his summary judgment papers, though he offers to do so if the Court believes it is necessary. Wu cannot defeat summary judgment by inviting the Court to request additional materials, which he vaguely suggests (without specific citation) could preclude summary judgment. <u>See</u> Fed. R. Civ. P. 56(c)(3).

Declaration were true, no jury could find infringement on that basis.[11] Any claims of infringement based on unidentified works also fail for the independent reason that 17 U.S.C. § 411 requires registration of copyright claims prior to instituting a suit for infringement, which plaintiff has failed to do with respect to all unidentified works.[12]

Next, plaintiff cites to various deposition excerpts of Pearson personnel and settlements Pearson has made with respect to late permissioning claims by individuals other than Wu. (See Mem. Law Opp'n Def.'s Mot. Summ. J. 13, ECF No. 52.) None of this is any moment to the core issue at hand: whether there are facts that would allow a jury to find plaintiff's copyrighted materials were used by Pearson without permission.

Third, Wu argues that the invoices cited do not constitute the complete license agreements between Pearson and the Photo Agencies. He maintains that the full agreements (including, for example, preferred pricing agreements) prohibit late permissioning. (See id. 20-22.) However, plaintiff fails to cite to any such

---

[11]    In connection with this argument, plaintiff makes a passing request for leave to amend his complaint to add these additional uses. (Mem. Law Opp'n Def.'s Mot. Summ. J. 10, ECF No. 52.) This is not a formal motion to amend, and no proposed pleading is attached. In any event, it comes too late. More than two years have passed since this action was filed, and we have reached the summary judgment stage. He also requests relief under Federal Rule of Civil Procedure 56(d) arguing that he has had inadequate time for discovery. (Mem. Law Opp'n Def.'s Mot. Summ. J. 9 n.3, ECF No. 52.) The Court disagrees. Plaintiff has had ample opportunity to prosecute this action. While he may now regret waiting two years to obtain the discovery necessary to prevent his case from being dismissed on summary judgment, he cannot avoid the consequences of that decision under Rule 56(d).

[12]    There are exceptions to the registration requirement of 17 U.S.C. § 411, but none of them change the outcome here. While that requirement does not apply to suits to vindicate the rights of attribution and integrity of authors under 17 U.S.C. § 106A(a) and while plaintiff's complaint does seek damages under section 106A(a), he does not allege facts that would entitle him to relief under section 106A(a), much less cite to record material that would allow a jury to find he is entitled to such relief.

agreements or any other facts that would permit a jury to find that other agreements alter the licenses in a manner that would prohibit late permissioning. (Wu would also need to explain the interaction between the alleged facts and his concession regarding the broad discretion he granted the Photo Agencies, including to retroactively license.)  The only agreement (other than an invoice) cited by plaintiff is the "Getty Images' Image Storage Agreement." (McCulloch Decl. Ex. 6, ECF No. 53.)  But that contract contains no provisions prohibiting late permissioning.[13]

Finally, Wu argues that the documentation for "Deep Sea Anglerfish" is not an invoice for the Quick Reads Library and, consequently, not a valid license.  (See Mem. Law Opp'n Def.'s Mot. Summ. J. 14, ECF No. 52.)  Pearson has submitted (and Wu acknowledged) documentation from Pearson requesting Minden's permission to use a group of works including "Deep Sea Anglerfish."   (Church Decl. Ex. 21, ECF No. 48.)  The request is signed as "agreed to and accepted by" an account executive at Minden.  (Id.)  Wu's memorandum of law merely cites to the document itself.  In addition, Wu specifically testified that Pearson obtained permission to use all of the Identified Works.  (Wu Depo. 305:23-306:15.)  Plaintiff's conclusory assertion is insufficient to raise a triable issue of fact as to the validity of the license Pearson obtained for "Deep Sea Anglerfish."

---

[13]      Plaintiff also argues that it was Pearson's burden on this motion to produce all of this additional paperwork. The Court disagrees. Pearson's burden was to produce evidence that it had obtained a license for the allegedly infringing uses.  Pearson satisfied that burden by producing contracts that gave it the right to use each of the Identified Works and by receiving admissions from Wu that it had obtained those rights. The burden then shifted to Wu to raise a triable issue of fact that the licenses were insufficient. By failing to cite any of the agreements that allegedly rendered those licenses insufficient, Wu has not met that burden.

Accordingly, there is no triable issue of fact as to whether Pearson used the Identified Works, or any other works to which Wu own rights, without a license. Consequently, plaintiff's claims must fail.

**V.**     **CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment is GRANTED, and this case is dismissed.

The Clerk of the Court is directed to terminate the motion at Docket No. 48 and to terminate this action.

SO ORDERED:

Dated:       New York, New York
             January _ll_, 2013

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge

15